### RUST v. HEAVEY.

(Court of Appeals of District of Columbia.   Decided February 5, 1923.)

No. 3809.

1. **Landlord and tenant** ⬅200(1½)—**Rent fixed by commission held confiscatory.**

Where there was no showing, in proceedings before the rent commission to fix the rent of one out of 29 apartments in a building, that the total rental was not properly apportioned among the different apartments, and it appeared from the evidence that, if the rent of each of the other apartments was reduced in the same ratio as that of the apartment in controversy, the landlord would receive only 4 per cent. on his investment, the rent fixed by the commission was confiscatory, even though no other tenant had objected to the rent.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Landlord and tenant ⟨⟩200(1½)—Where total rental was fairly apportioned between apartments, effect of determination on entire schedule should be considered.**

Where the total rental derived from 29 apartments in a building was fairly apportioned between the several apartments, the commission, in determining a fair rental for one of those apartments, should consider that the determination of any one of the rates ought necessarily to affect the entire schedule.

Appeal from the Rent Commission.

Complaint by John W. Heavey against H. L. Rust before the rent commission for the determination of a reasonable rental of an apartment. From an order of the commission fixing the rental, the landlord appeals. Reversed and remanded.

Joseph T. Sherier, of Washington, D. C., for appellant.

J. I. Peyser, G. E. Edelin, and Chapin Brown, all of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. This appeal challenges a decision of the rent commission of the District of Columbia, which determined the rental for apartment 24 in The Altamont, 1901 Wyoming Avenue, North West, in the city of Washington. The landlord demanded $212 per month as rent, which the tenant claimed to be unfair and unreasonable. Accordingly the dispute was submitted to the rent commission for decision. On September 24, 1920, the commission held against the claim of the landlord, and determined that $158 was a just and reasonable rent for the apartment. Afterwards, to wit, on October 3, 1921, the landlord applied to the commission for a rehearing of the question, which was had; but upon consideration the commission approved its former ruling, and again held that $158 per month was the just and reasonable rental for the premises. The landlord appealed from the decision.

It appears from the record that the Altamont Apartment was erected prior to January, 1917, at a cost exceeding $300,000, exclusive of the land. It is testified that the land alone was worth about $100,000. In December, 1919, the present owner purchased the property at the price of $345,000, from the trustees in insolvency of the former owner. The architect of the building testified that at the time of the hearing it would cost $606,561 to reproduce the building. A real estate expert testified that the fair market value of the property was $500,000. No other testimony concerning the cost or market value of the property was taken at the trial.

The building contains 29 apartments and a dining room. It was opened for occupancy in January, 1917, at which time a schedule of rents was adopted covering all of the apartments. According to the schedule the rent for this apartment was fixed at $141.66, and the total rent for all the apartments was $41,139.84. It does not appear that the net in-

come from the dining room would substantially affect the calculation. On October 1, 1920, however, the present owner increased the rent for this apartment to $212, and the total rent of all the apartments to $64,149. There is no reason apparent upon the record to doubt that in each instance the total rent of the building was fairly distributed among the several apartments in proportion to their desirability and rental value. In the present proceedings, however, so far as the record discloses, only one of the 29 apartments was protested, and the commission expressed no finding whatever concerning the other 28 apartments, nor did it report any finding as to the total value of the property.

[1] The appellant complains that, if the rate fixed by the commission in this case be applied to the schedule as a whole, the gross return from the building would be reduced to $45,676.62. The record shows that the actual operating expenses for the year 1920 were $25,201.13. Accordingly, if the value of the property be estimated at $345,000, which the present owner paid for it at a forced sale, and if 2 per cent. per annum be allowed for depreciation, it will be found that the gross income aforesaid, less the expenses, would produce a net return of about 4 per cent. per annum upon the investment. But such a calculation would be unfair toward the owner, for the testimony shows that the actual market value of the property greatly exceeds $345,000, and that the operating expenses have substantially increased since 1920. Therefore, upon the basis of the foregoing calculation, it appears that the determination of the commission is confiscatory.

[2] If it be claimed, however, that the commission's decision applies to apartment 24 only, and does not require nor imply that the entire schedule of rents should be reduced, the answer must be that such a claim is totally inconsistent with the fair import of the present record. For it may reasonably be concluded therefrom that the rent for apartment 24, as demanded by the owner, was consistent with the rates fixed for the other apartments also, and accordingly that a determination of any one of the rates should necessarily affect the entire schedule. This view does not seem to have been regarded by the commission, and accordingly its decision is subject to the disapproval expressed in a like instance by this court in Karrick v. Cantrill, 277 Fed. 578, 51 App. D. C. 176, 179.

The decision is consequently reversed, at the costs of the appellee, and the cause remanded to the commission, for such further proceedings as may be consistent with this opinion.